### Dreer and Wilson *versus* Carskadden.

*Location of land ascertained by marks in return of older surveys, though not visible on the ground.— Validity of chamber surveys.*

1. In an action of ejectment, where the question was as to the proper location of a warrant, and there was proof of an admitted corner of an adjoining survey, which the surveyor under the first warrant had adopted, protracting a line from it and giving the course and distance thereof in his return some sixty years before the date of the competing warrant and survey, it was held error to instruct the jury that before they could adopt the line from that corner they must be satisfied that there were marks on the ground corresponding with the date of survey. Such instruction would be fatal to every chamber survey on record.

2. Any of the marks of an older survey may be appealed to in fixing the location of a younger one, and it is the duty of surveyors under younger warrants to adopt such ancient marks in their surveys, rather than establish new ones.

ERROR to the Common Pleas of *Clinton county*.

This was an action of ejectment by F. J. Dreer and James Wilson against David Carskadden, for a tract of land in Bald Eagle township, containing four hundred and fifty-nine acres.

The plaintiffs claimed title under a warrant granted to Jane Nelson, on the 7th April 1794, for four hundred and fifty acres in Bald Eagle township, Lycoming county, upon which a survey was made of four hundred and fifty-nine acres and one hundred and thirty-three perches, on the 10th of September 1795. By virtue of certain conveyances given in evidence, an undivided interest in this tract became vested in the plaintiffs. On the supposition that the "Jane Nelson" survey embraced more land than the warrant called for, Joseph B. Anthony, on the 31st of May 1831, took out a warrant, and on the 17th of August 1831 made a survey, laying it on the "Nelson" tract, calling for Thompson, Martin, and Gray as its northern boundary, and covering nearly one-half of the Nelson survey.

The defendant asserted title to the premises under a warrant to Charles Carskadden, dated October 3d 1859, upon which a survey of four hundred and ten acres and four perches was made on the 6th October 1859. The paper titles of the parties under which they claim respectively were not in dispute, and the question presented, and upon which the whole case depended, was one of location. If the Nelson survey was located where the plaintiffs alleged it is located, then, according to the testimony of the surveyors, it would embrace the land covered by the Carskadden survey. The defendant, however, contended that a proper location of the Nelson survey would not interfere with the survey of Charles Carskadden. The location of Carskadden being a survey of recent date, was well established by the evidence as

lying along the northern boundary of the tracts in the name of
Mark Slonacker, Abram Lawshe, and Thomas Calvert, so that
the question was still further narrowed down to this—Did the
Charles Carskadden survey occupy the land which had been
previously appropriated by the survey of Jane Nelson?

On the trial the defendant offered in evidence a certificate of
the proceedings of the board of property, September 20th 1859,
on the petition of Frederick J. Dreer and James Wilson, in rela-
tion to this tract of land, for the purpose of showing that the
plaintiffs in the suit disclaimed having any title to the land covered
by defendant's warrant and survey, and that the board of pro-
perty recognised and acted on their declarations; to be followed
by proof that the resurvey then ordered did not include the land
embraced in the defendant's warrant; and also to show declara-
tions of defendant as to the location of the survey claimed by
them and named in their petition. This was objected to because
it was not offered to show the return in pursuance of the petition,
but the objection was overruled and the paper admitted.

Among the points presented by the defendant, on which the
instruction of the court was requested, were the following:—

1. That no marks being found upon the ground correspond-
ing in date with the Jane Nelson survey, it must be located by
its calls, and that the location of the junior survey in the name
of Joseph B. Anthony, can in no way affect the question of the
true location of Jane Nelson.

8. That the white oak called for on the western end of the
Jane Nelson survey can only be regarded by the jury, in fixing
her location from east to west.

The court below in their general charge, after stating the
main facts of the case, instructed the jury as follows:—

"How are we to ascertain the location of Jane Nelson? The
marks on the ground are the best evidence of the location, and
where these are found the survey must conform to them, notwith-
standing they may differ from the return made by the surveyor
into the land office. Where, however, no marks are found upon
the ground corresponding with the survey, then the next best
evidence of location are the boundaries called for in the return
of survey made by the deputy surveyor. Now let us apply these
rules to the case in hand. The surveyors who have been on the
ground from time to time, and who have testified as to the result
of their explorations, have all concurred in saying that the
southern line of the Thompson, Martin, and Gray surveys, which
is called for as the northern boundary of the Jane Nelson, and
is properly known as the Cadwalader Evans line, is so well
established as not to admit of dispute; they agree in saying that
they find a white oak, which, if the Evans survey were extended
southward as far as claimed by the defendants, would correspond

with the call for a white oak near the south-western corner of the Nelson survey, and a survey in the names of James Taylor is also found by nearly all of them, which, the plaintiffs allege, adjoins Nelson on the west. You will notice a dotted line running westward from the white oak on the official draft of Jane Nelson. The plaintiffs say that this white oak is the north-east corner of the James Taylor tract, and that the southern line of the Nelson should be run from a fallen maple which stands about twenty-seven perches south of the white oak, and which counted in 1827, according to Mr. Treziyulny's statement, thirty-nine years. This would very nearly correspond with the Taylor survey which was made in 1789. [In running the line from the fallen maple N. 60 E., which is claimed as the southern line of Nelson, according to plaintiff's location, no marks are found corresponding with the date of Nelson survey exactly.] Judge Quay speaks of a tree which he blocked and found that it counted sixty-four in April 1860, and Mr. Treziyulny speaks of finding a small black oak at two hundred and twenty-three perches, which he blocked and found it to count to 1789. This is claimed as the black oak in the southern line of the official survey of Nelson, and from which a dotted line is run nearly at right angles. With the exception of the tree spoken of by Judge Quay, the other marks found by the surveyors along the southern line are quite too old or too young to have been made for the Nelson survey. [You will notice by reference to the draft of Nelson, that it calls on the south for Taylor's land. There is, however, no evidence in the case tending to show that there is any survey in the name of Taylor, or which was known as Taylor's land, lying south of a line running from the fallen maple. An old draft has been produced by one of the witnesses said to have been made by old Mr. Treziyulny, upon which he has protracted a survey in the name of John Taylor, but, so far as the evidence in the case shows, no one ever heard of such a survey lying in that place.] Have the plaintiffs satisfied you that the line running N. 60 E. from the fallen maple is the southern line of the Nelson survey? If they have, then it will extend northward to the Cadwalader Evans line, called for as its northern boundary, and include all of the Carskadden survey, notwithstanding it may thus be made to embrace double the quantity of land called for by the return of survey. So far as we can discover, the Supreme Court have never defined the quantity of excess which may be held by a warranty against a subsequent grantee from the Commonwealth, and we therefore think it expedient in this case to instruct you in plain terms, as we have done, that the plaintiffs will be entitled to hold to the Cadwalader Evans line, notwithstanding the marks on the ground may fix the southern line of the Nelson survey so far distant as to embrace twice as

[Dreer *v.* Carskadden.]

much land as returned. [But before you can adopt the line from the fallen maple or the southern line of the survey, you must be satisfied that there are marks on that line corresponding with the date of the survey, or that the black oak found by Treziyulny is the black oak called for by the return of the surveyor. It is not enough that the plaintiffs show a marked line; they must also show that the marks correspond with the return of survey.]

"If the plaintiffs have failed to fix the southern line by marks upon the ground corresponding with the survey of its calls, then the Nelson survey can extend no further southward from the Evans line than the distance indicated by the official return, and it seems to be quite clearly proven that in such case it would not interfere with the Carskadden tract.

"From this you will discover that after all the question upon which the case turns is, where is the true location of the southern line of Nelson? Its northern boundary is fixed by the call for the Evans line, and its extent eastward and westward is not in dispute. This is a question of fact which we submit to you. If, under the evidence and the instructions we have given you, you find the line from the fallen maple to be the southern line of the Jane Nelson, then the plaintiffs will be entitled to recover such undivided interest as is vested in them by the deeds given in evidence. But if the plaintiffs have failed to show the location of the southern line of their survey by marks upon the ground corresponding therewith, they will be confined to the official distance southward from the Evans line, and if you believe the surveyors, that the tract would not in such case interfere with Charles Carskadden, the plaintiffs have no claim to recover, and your verdict should be with the defendant."

The defendant's points were answered as follows:—

"1. Whether there are marks found upon the ground corresponding with the Nelson survey is a question of fact for you, although the evidence tending to show the existence of such marks may be but slight and indistinct. If no such marks are found, then the survey must be located by its calls. We affirm the proposition that the location of the junior survey, in the name of Anthony, can have no effect upon the location of the older survey of Nelson. The calls of Joseph B. Anthony for the Nelson cannot influence the location of the latter.

"8. As we understand this point, the defendant's counsel asks us to instruct you that the white oak cannot be regarded as determining the extent of the Nelson survey southward, but only westward; and thus understanding the prayer for instruction, we answer it in the affirmative. It is not pretended that the white oak is a corner of the Nelson tract, but on the contrary it is argued that it is a corner of James Taylor, and stands in the western line of Nelson, a short distance from the south-western

[Dreer *v.* Carskadden.]

corner. The distance from the white oak called for to the corner of Nelson is not given on the survey as returned, and therefore we affirm this proposition of the defendant, and instruct you that the location of the southern line of the Nelson cannot be determined or fixed protraction from the white oak. Nothing short of the finding of marks upon the southern line of Nelson, corresponding with the date or return of survey, will be sufficient to extend the survey southward beyond its official distance from the Evans line."

Under these instructions there was a verdict and judgment in favour of defendant. Whereupon the plaintiffs sued out this writ, averring·here that the court below erred in admitting in evidence the certificate of the proceedings of the board of property above mentioned; in so much of the general charge as is printed above in brackets; and in the answers given to the first and eighth points propounded by him on the trial.

*James Armstrong* and *H. N. McAllister*, for plaintiffs.

*Mayer* and *Hall*, for defendant.

The opinion of the court was delivered, June 22d 1864, by

WOODWARD, C. J.—The question here was upon the location of the warrant and survey in the name of Jane Nelson. The warrant issued April 7th 1794, calling for four hundred and fifty acres in Bald Eagle township, then Lycoming county, was returned as surveyed September 10th 1795, including four hundred and fifty-nine acres one hundred and fifty-three perches, and was patented for that quantity to Joseph Fearon April 29th 1796. The figure of the survey was a parallelogram, the north and south sides of which were six hundred perches in length, and the east and west ends one hundred and thirty perches long. As no marks were found on the ground which had been made for this survey, the presumption is reasonable that it was a chamber survey which adopted the marks of older surrounding surveys—a circumstance which in nowise invalidates the legal effect of the survey, but which compels us to depend altogether on surrounding surveys for its location.

In 1831, the late Joseph B. Anthony, discovering probably that the courses and distances of Jane Nelson would not embrace all the land within her lines as defined by her calls for adjoiners, took a warrant and surveyed three hundred and ninety-nine acres one hundred and forty-eight perches on the northern half of the parallelogram which constituted the Nelson survey, and thus pushed her away from her northern boundary. In 1859, Charles Carskadden, conceiving that Jane Nelson ought to lie on the ground from which Anthony had driven her, took his warrant

and surveyed four hundred and ten acres and four perches on the southern half of Jane Nelson. Thus Anthony and Carskadden have appropriated over eight hundred acres within lines claimed for the four hundred and fifty-nine acres of the Jane Nelson, and between them she has not a foot of ground left to stand upon.

The learned judge assumed that the southern boundary of John Thompson, John Martin, and William Gray, well-known tracts, older than the Nelson warrant, was the northern boundary of the Nelson survey. These tracts were known as the Cadwalader Evans lands, and the line that describes their southern boundary, and which was assumed as the northern boundary of Nelson, is what is called the Evans line. The call for these tracts by the Nelson survey and the testimony of the surveyors, seem to justify the assumption made by the judge, though it is manifest the effect of it is to kill the Anthony title, which was not represented in this suit. It was next distinctly admitted by the court that if the southern boundary of Nelson could be fixed where the plaintiffs claimed it to be, the excessive quantity would be no objection to their recovery—that both the Anthony and the Carskadden warrants would have to yield to the Nelson, and that the owners of that survey would have to be called on in another way by the Commonwealth to pay for the excess of land in their patent.

It is manifest that the only thing that the plaintiffs in error, who were plaintiffs below, have to complain of in such a charge, must relate to what was said touching the southern boundary of Nelson. And in looking through the record we see nothing on that subject that is questionable except those parts of the charge which are contained in the 5th and 7th assignments of error.

If the fallen maple were, as Treziyulny is very clearly of opinion that it was, a corner of the James Taylor tract, which was an older survey than the Nelson, and the surveyor, in returning the Nelson warrant, adopted it, and protracted the line N. 58° E. from it six hundred perches, and so returned it into the land office thirty-six years before Anthony took his warrant, and sixty odd years before Carskadden took his, it was a sufficient establishment of that line, though no mark was ever set upon it. It was therefore clearly wrong to tell the jury that before they could adopt the line from the fallen maple on the southern boundary, they must be satisfied that there are marks on that line corresponding with the date of the survey. No chamber survey could be established under such instructions. I attach no importance to the black oak which Treziyulny found on this line, for it did not count to the date of the Nelson survey, and although it may have been marked for an intended survey in the name of John Taylor, which is one of the southern calls of the

[Dreer *v.* Carskadden.]

Nelson, yet no warrant in the name of John Taylor was ever located in that place, and this call fails to identify the location of Nelson. But the old maple, which was probably intended for a corner of the contemplated survey in the name of John Taylor, was in the boundary line of James Taylor, a well-located warrant, older than the Nelson. Though not a corner of James Taylor, it was a landmark from which both Treziyulny and Quay located James Taylor. It was on the ground then, when the Nelson warrant was laid, and must have been known to the deputy surveyor. Now if, instead of going upon the ground, and actually marking the lines of the Nelson warrant, he adopted the Evans line on the north, and a line running N. 58° E. from this old maple for the southern boundary, here was a location of the warrant which after thirty years would have been as actual an appropriation of the land as if the southern line had been well marked on the ground: Caul *v.* Spring, 2 Watts 390; Martz *v.* Hartley, 4 Id. 261; Schnable *v.* Doughty, 3 Barr 392; McBarron *v.* Gilbert, 6 Wright 279; Bellas *v.* Cleaver, 4 Id. 267; and what greatly favours the presumption that he did adopt the old maple as a corner of the Nelson is the fact, that in the western boundary of his return of survey he called for the white oak, which is an accredited corner of the James Taylor. The court said, in that part of their charge which is contained in the 7th assignment, that this white oak could only be regarded as fixing the location of Jane Nelson from east to west, and the reason given was, that the distance from the white oak to the south-west corner of Nelson is not marked in the return of survey. We think this was a misdirection. That white oak called for in the return of the Nelson warrant, as standing in her western boundary much below the middle of the parallelogram, and far beyond the one hundred and thirty rods called for as the official distance of that end of the parallelogram, proves that if you are to start from the Evans line on the north, you cannot stop where Anthony placed his southern, and Carskadden his northern line, for you *must* go to the white oak, but as it is not a corner, the figure of the survey as returned requires you to go beyond it. Beyond it how far? Treziyulny and Quay say twenty-seven perches to the old maple, a line tree of the James Taylor, and thus they are enabled to say that they consider the southern boundary of the Nelson as well fixed as the northern. The distance can only be inferred from the figure and proportions of the diagram, and although the opinion expressed by the surveyors is necessarily speculative, it strikes us as not unreasonable. The error of the court consisted in giving no weight to the white oak in fixing the *width* of the parallelogram. Whatever the difficulty of fixing the distance beyond it in a southerly direction, the line from the Evans line must run to and beyond the white oak, for nothing is

[Dreer v. Carskadden.]

more certain than that any of the marks of an older survey may be appealed to in fixing the location of a younger, and indeed it was the duty of the surveyor to call for these marks of the older survey, instead of confusing evidence by making new ones.   The white oak as a corner of James Taylor was properly called for as a line-tree of Nelson, for it was capable of being a corner of one tract and a line-tree of another.

In this manner the white oak becomes important not only in fixing the length of the parallelogram, but its width also, and it bears directly upon the question whether the maple should be adopted as the corner of the Nelson survey.   The jury should have been led to this view of the evidence, or, to say the least that can be said, they should not have been led away from it. And yet the parts of the charge indicated in the 5th and 7th assignments led them quite another way.   They received no proper instructions on the effect of a chamber survey returned for more than twenty-one years, nor on the effect of calls for the marks of older surveys.   These were two great defects of the charge, and for these errors the record must go to another trial.

We say nothing decisive about the over quantity in the Nelson survey, for no account was made of that in the court below; and nothing against the Anthony warrant and survey, for it is not before us, and nothing that we mean to be decisive of the location of the Nelson warrant, for it is a question for the jury. What we would be understood as deciding is, that the instructions which the jury received were not, in the two particulars specified, such as the cause demanded.   If, under proper instructions, the jury had located the southern boundary of the Nelson warrant where Mr. Quay thinks it may be located, then, on the assumption that the Evans line was the northern boundary, the plaintiffs would have been entitled to recover such fractional parts of all the land embraced by these lines as their title-papers covered.

The judgment is reversed, and a *venire facias de novo* is awarded.